UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-161-RJC-DCK

| BARBARA RADFORD | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | ORDER |
|  | ) |  |
| ANDREW SAUL,[1] Acting | ) |  |
| Commissioner of Social Security | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 9, 10), and the parties' associated briefs and exhibits. The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Barbara Radford ("Plaintiff") seeks judicial review of Andrew Saul's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("SSA") on May 29, 2014, alleging a disability onset date of August 4, 2013. (Doc. No. 8-1: Administrative Record ("Tr.") 55). Her application was denied first on August 8,

---

[1] Andrew Saul became the Acting Commissioner of Social Security on June 17, 2019. Under Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the defendant in this suit. No further action is necessary under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2014, (id.), and upon reconsideration on September 15, 2015. (Id.). Plaintiff filed a timely request for a hearing, and an administrative hearing was held by an administrative law judge ("ALJ") on July 25, 2017. (Id.).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA on November 8, 2017. (Tr. 68). Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on April 14, 2018. (Tr. 14–18). After having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i) and 223(d) of the SSA. (Tr. 55). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[2] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on August 4, 2013, due to a combination of physical and mental impairments. (Tr. 57–58, 60).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 68). In

---

[2] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to [her] past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 67).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental impairments, and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 58–60). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found that Plaintiff

3

> has the [RFC] to perform sedentary work . . . except she can lift 10 pounds occasionally, stand or walk for approximately 2 hours per 8-hour workday and sit for approximately 6 hours per 8-hour workday with normal breaks. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She can occasionally balance with hand-held assistive device (used to ambulate to and from the workstation). She can frequently stoop, and occasionally crouch, kneel, or crawl. She is limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and with few, if any, work place changes. She is capable of learning simple vocational tasks and completing them at an adequate pace with persistence in a vocational setting. She can perform simple tasks for 2-hour blocks of time with normal rest breaks during an 8-hour workday. She can have only occasional interaction with the public and coworkers.

(Tr. 60–61). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 66). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 67). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three representative occupations that exist in significant numbers in the national economy: "document preparer,"[3] "addresser,"[4] and "order clerk."[5] (Tr. 67). According to the DOT, the document preparer job and the order clerk job require a Reasoning Level of 3, and the addresser job requires a Reasoning Level of 2. (Tr. 67). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments do not prevent her from

---

[3] DOT 249.587-018, 1991 WL 672349.
[4] DOT 209.587-010, 1991 WL 671797.
[5] DOT 209.567-014, 1991 WL 671794.

working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 55).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled his lawful duty in his determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. §§ 405(g) and 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also

5

Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

Plaintiff alleges that the ALJ made two errors: (1) the ALJ failed to properly weigh opinion evidence; and (2) the ALJ failed to properly reconcile conflicts between the VE's testimony and the DOT. The Court disagrees with both of Plaintiff's allegations of error and addresses each in turn.

#### A. Substantial evidence supports the ALJ's determination regarding the weight of opinion evidence.

Plaintiff first argues that the ALJ erred by improperly evaluating opinion evidence of a psychological consultative examiner, Dr. French, Psy.D. The Court finds that substantial evidence supports the ALJ's decision to give little weight to Dr. French for the reasons established below.

Under SSR 16–3p, an ALJ must "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as

consistent with the objective medical and other evidence in the individual's record." But, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." 20 C.F.R. § 404.1529(a). SSR 16–3p identifies regulatory factors that the Agency looks to in determining disability: "[t]he location, duration, frequency, and intensity of [a claimant's] pain or other symptoms; daily activities"; precipitating and aggravating factors; medications and their side effects; and other measures taken to relieve the pain or symptoms. Id. § 404.1529(c)(3). An ALJ may find a claimant's statements unpersuasive based on "any inconsistencies in the evidence" or "the extent to which there are any conflicts between [the claimant's] statement and the rest of the evidence." Id. § 404.1529(a).

Here, the ALJ explained that he gave little weight to Dr. French's opinion because his report was inconsistent with the record evidence. Dr. French opined that Plaintiff could not perform simple, routine, repetitive tasks. (Tr. 65). But the ALJ noted that this was inconsistent with other medical evidence and examinations and Plaintiff's ability to perform daily activities. (Tr. 63–65). For example, the ALJ discussed the medical evidence of record that showed inconsistencies with Dr. French's opinion concerning the intensity and limiting effects of her symptoms. The ALJ noted that Plaintiff has a history of low back pain, and after an MRI was performed in 2015, the treating provider reviewed the results and found them unremarkable. (Tr. 62). Furthermore, Plaintiff was referred to a neurologist, Dr. Hartshorn, in 2017, who encouraged Plaintiff to do physical therapy "as the problem appeared pain related." (Id.). The ALJ discussed the opinion of Edward S. Lewis,

M.D., a medication management provider, who opined that Plaintiff is unlikely to be capable of working due to the weakness in her legs. (Tr. 64). However, the ALJ gave little weight to this opinion because it was not based on Dr. Lewis's specialty. (Id.). The ALJ explained that he discounted Dr. Lewis's opinion because Dr. Lewis—a medication management provider—thought that Plaintiff's physical limitation was neurologically related, even though the neurologist indicated that Plaintiff's symptoms were pain-related. (Id.). Accordingly, the ALJ found that a reduced range of sedentary work and a limitation to simple, routine, repetitive tasks would accommodate for Plaintiff's degenerative disc disease of the lumbar spine and weakness in her legs. (Tr. 63–64).

Additionally, the ALJ gave some weight to the physical consultative examiner, Frank H. Wood, M.D., who noted that Plaintiff "had a normal range of motions, normal gait and station, and normal dexterity." (Tr. 64). The ALJ noted that Dr. Wood's opinion was supported by medical records, which demonstrated normal physical examination findings. (Id.). Furthermore, the ALJ noted that the record indicates that Plaintiff has visited the hospital and received treatment for mental health impairments. (Tr. 63). Despite this, the ALJ noted "other medical appointments showed psychiatric examinations with significantly normal findings." (Id.). The ALJ gave some weight to the opinions of state agency psychological consultants, Darolyn Hilts, Ph.D. and Brian Grover, Psy.D. (Id.). Dr. Hilts and Dr. Grover found that Plaintiff can perform simple, repetitive tasks, can interact with others with limited interpersonal demands, and can sustain concentration and pace

8

for simple tasks. (Tr. 65). The ALJ noted that these findings "are supported by significantly normal mental examination findings, with the exception of mood swings." (Id.). Psychological consultative examiner, Steven E. French, Psy.D., observed that Plaintiff is unable to perform simple, routine, repetitive tasks. (Id.). Little weight was given to this opinion because the ALJ determined that his report was inconsistent with other medical evidence, such as Dr. Hilts and Dr. Grover's indication that Plaintiff can perform simple, repetitive tasks. (Id.).

Next, the ALJ discussed that the evidence of record indicates that Plaintiff is independent in performing daily activities. (Tr. 63). The ALJ noted that Plaintiff shops in stores for groceries, takes care of two dogs, is able to drive, prepares simple meals, and has no problems handling her finances online. (Tr. 59). Accordingly, the ALJ's explanation of the record evidence supports the ALJ's finding that limiting Plaintiff to "simple, routine, and repetitive tasks performed in a work environment free of fast-paced product requirements, involving only simple, work-related decisions, and with few, if any work place changes" and "only occasional interaction with the public," would account for any moderate limitations in CPP and mental health issues Plaintiff might have. (Tr. 66). Finally, the ALJ concluded that "the evidence of the record is inconsistent with the claimant's alleged [RFC] and degree of debilitating physical and mental health condition." (Tr. 65). The Court finds that the ALJ pointed to other, substantial evidence of record which tends to contradict Plaintiff's subjective allegations of symptom severity and limitations. Therefore, the ALJ properly weighed opinion evidence and determined that Plaintiff's subjective

complaints were not entirely consistent with record evidence. In sum, the Court finds that the ALJ built "an accurate and logical bridge from the evidence to his [RFC] conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)), and finds no reversible error on Plaintiff's first allegation of error.

### B. The ALJ properly relied on the VE's testimony.

Plaintiff argues that an apparent conflict existed between Plaintiff's limitation to perform only simple, routine, repetitive tasks and jobs which require a Reasoning Level 2 or higher.

In Pearson v. Colvin, 810 F.3d 204, 209 (4th Cir. 2015), the Fourth Circuit held that the ALJ has not fully developed the record if any unresolved conflicts exist between the VE's testimony and the DOT. Pearson elevated the ALJ's responsibility in addressing apparent conflicts. Now, an ALJ cannot rely unquestioningly on a VE's testimony; instead, an ALJ must ask the VE whether his or her testimony conflicts with the DOT. Id. at 208. And even if the VE answers that no conflicts exist, the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." Id. at 208–10. This means that the ALJ must identify where the VE's "testimony seems to, but does not necessarily, conflict with the [DOT]." Id. at 209.

The DOT's Reasoning Development scale has six levels: Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702. Reasoning Level 2 requires the ability to "[a]pply

10

commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. Reasoning Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." Id. Here, the VE identified three jobs that Plaintiff could potentially perform: (1) document preparer, (2) addresser, and (3) clerk. (Tr. 67). According to the DOT, document preparer and order clerk require a Reasoning Level of 3 and addresser requires a Reasoning Level of 2.

Recently the Fourth Circuit has held that an apparent conflict exists "between a limitation to 'short, simple instructions' and a need to carry out 'detailed but uninvolved . . . instructions' (as found in jobs requiring Level 2 Reasoning)." Thomas v. Berryhill, 916 F.3d 307, 313–14 (4th Cir. 2019), as amended (Feb. 22, 2019). However, in this case, Plaintiff has no limitation comparable to the limitation which the Fourth Circuit found problematic in Thomas. Unlike in Thomas, the ALJ did not recognize that Plaintiff had any limitations in her ability to follow or comprehend instructions. Differing from Thomas, although the ALJ found that Plaintiff has moderate limitations in CPP, he also noted that Plaintiff's CPP appeared within normal limits during a psychological consultative exam. (Tr. 60). Additionally, the ALJ pointed to record evidence showing that Plaintiff is independent in performing daily activities such as driving, paying bills online, and taking care of her pets. (Tr. 59). Therefore, the ALJ did not include any limitation

11

in Plaintiff's RFC regarding short and simple instructions because he found that Plaintiff had no such limitations for which to compensate. (Tr. 61). Rather, the ALJ limited Plaintiff to simple, routine, and repetitive tasks. (Id.). The Court finds that a meaningful difference exists between a limitation to *perform* only simple, routine, repetitive tasks—Plaintiff's RFC limitation here—and a limitation to only receive and follow short, simple instructions—the RFC limitation in Thomas. The first limitation accounts for a claimant's ability to *perform* certain job tasks while the second limitation accounts for a claimant's ability to *comprehend* job tasks, and therefore, Thomas is distinguishable from the case at bar.[6] Moreover, this Court has consistently held that no apparent conflict exists between a limitation to perform simple, routine, repetitive tasks and jobs with Reasoning Level 2 or higher.[7] Therefore, the Court rejects Plaintiff's allegation of error and finds that no apparent conflict exists under Pearson.

---

[6] This Court recently rejected Plaintiff's argument, and the Court's decision today is consistent with that decision:

> Plaintiff's RFC does not limit the number of instructions Plaintiff is able to follow, resulting in no apparent conflict for the ALJ to identify. The Court acknowledges that the Fourth Circuit in Thomas v. Berryhill has held an apparent conflict arises between an RFC of "short, simple instructions" and "detailed but uninvolved . . . instructions" in jobs requiring Level 2 reasoning. Thomas v. Berryhill, No. 17-2215 at *9 (4th Cir. 2019). Here, Plaintiff's RFC of "simple, routine, repetitive tasks" does not conflict with the DOT definition of Level 2 reasoning.

Kiser v. Berryhill, No. 3:17-CV-00739, 2019 WL 1173376, at *6 n.2 (W.D.N.C. Mar. 13, 2019).

[7] See, e.g., Walters v. Berryhill, No. 3:17-CV-538, 2018 WL 7200665, at *6 (W.D.N.C. Nov. 5, 2018), report and recommendation adopted, No. 3:17-CV-00538, 2019 WL 427330 (W.D.N.C. Feb. 4, 2019); Wilhelm v. Berryhill, No. 5:17-CV-00138,

## IV. CONCLUSION

Because the Court concludes that the ALJ's decision is supported by substantial evidence and is not sorely lacking in a manner that frustrates meaningful review, the Court determines that remand is unwarranted.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 10), is **GRANTED**; and
3. The Clerk of Court is directed to close this case.

Signed: August 7, 2019

Robert J. Conrad, Jr.
United States District Judge

---

2018 WL 4705562, at *5 (W.D.N.C. Sept. 29, 2018) ("Therefore, no apparent conflict exists between jobs having a Reasoning Level of 2 or 3 and a limitation to only performing simple, routine, repetitive tasks."); Gaston v. Berryhill, 1:17-CV-182, 2018 WL 3873593, at *4 (W.D.N.C. Aug. 15, 2018); Corvin v. Berryhill, No. 5:17-CV-92, 2018 WL 3738226, at *4 (W.D.N.C. Aug. 7, 2018) ("Reasoning level 2 jobs 'do not imply an apparent conflict with a work limitation to simple, routine, repetitive work.'" (quoting Bethea v. Berryhill, 5:17-CV-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018)).